## UNITED STATES v. CERTAIN LAND IN CITY OF ST. LOUIS, MO., KNOWN AS CITY BLOCK 57 et al.

### No. 12548.

District Court, E. D. Missouri, E. D.

Dec. 27, 1944.

Harry C. Blanton, of Sikeston, Mo., and M. W. Cooper, of St. Louis, Mo., for plaintiff.

Rassieur, Long & Yawitz, of St. Louis, Mo., for defendant Moser Paper Box Co.

DUNCAN, District Judge.

Defendant the Moser Paper Box Company, a corporation, filed an application for the allowance of interest on the amount of compensation agreed upon between the United States and said defendant for the taking of City Block 57 in the City of St. Louis, and referred to in the condemnation proceeding as Parcel No. 342.

Plaintiff filed Declaration of Taking on June 19, 1939 and simultaneously deposited in the registry of the court the sum of $52,000 as the estimated compensation for the taking of the above property. Following the depositing of the $52,000 it was by the court ordered distributed for the benefit of the defendant the Moser Paper Box Company.

Commissioners were duly appointed and made an award in excess of the amount paid into court as compensation for the

taking of the land aforesaid, to which report of the Commissioners, both the plaintiff and the defendant the Moser Paper Box Company filed exceptions.

On February 23, 1944, while the exceptions to the report were pending, the defendant made an offer[1] in writing to the Secretary of the Interior, the Department of the Interior being the acquiring agency, to sell said parcel of land to the United States for the sum of $87,000 and stipulating that such offer might be accepted at any time within six months after the date thereof, and "thereafter until you are notified in writing by the undersigned that the offer is withdrawn." The offer in writing was approved and accepted by Oscar L. Chapman, Assistant Secretary of the Interior on March 11, 1944. Such offer provided that in the event of its acceptance, the United States, in its discretion might:

"* * * prosecute to a final determination the suit for the condemnation of said lands * * * and in that event, the consideration hereinabove set forth shall be the amount of the award to be decreed for all damages and compensation by reason of the taking of said land by such judicial proceedings and we hereby agree that this offer to sell, if accepted, shall, without more, constitute a stipulation which may be filed in said suit as final and bind-

---

[1] "The Honorable,

"The Secretary of the Interior.

"My dear Mr. Secretary:

"I, (we), owner (s) of the following described parcel of land in the City of St. Louis, State of Missouri, to-wit:

"Parcel 342 in City Block No. 57 more particularly described as follows: A lot in Block 57 of the City of St. Louis, State of Missouri, fronting 88 feet more or less on the West line of Second Street by a depth Westwardly of 160 feet 8¼ inches, more or less, to property of George R. Jansen Transfer Company, bounded North by Elm Street, bounded South by property of George W. Hartnett, et al.; within the area to be acquired by the United States for the Jefferson National Expansion Memorial hereby offer to sell said land to the United States of America for the sum of Eighty-seven Thousand Dollars ($87,000) in fee simple title absolute free and clear of all liens, encumbrances, or claims whatsoever, subject, however, to the rights, if any, of public utilities and the rights, if any, of the City of St. Louis in said block.

"This offer shall be in full force and subject to your acceptance for 6 months from its date and thereafter until you are notified in writing by the undersigned that the offer is withdrawn.

"This offer shall be considered as a compromise offer in settlement of the condemnation suits now pending and when this offer has expired as herein provided, if it has not been accepted, it shall become null and void and be of no further force or effect whatsoever and prior to its acceptance or after it expires without acceptance it shall not be admissible in evidence in said condemnation suit.

"It is understood that in the event you accept this offer, the United States of America may, in its discretion, prosecute to a final determination the suit for the condemnation of said lands now pending in the District Court of the United States for the Eastern Division of the Eastern District of Missouri, and in that event, the consideration hereinabove set forth shall be the amount of the award to be decreed for all damages and compensation by reason of the taking of said land by such judicial proceedings and we hereby agree that this offer to sell, if accepted, shall, without more, constitute a stipulation which may be filed in said suit as final and binding evidence of the award to be made in such proceedings and paid into Court for the benefit of all persons entitled thereto; and the purchaser, in addition to having title decreed in it in said condemnation proceedings, may also require and have our general warranty deed conveying said lands to the purchaser.

"It is further agreed that if this offer is accepted by the United States, complete possession of said premises will be delivered to the United States within 60 days after the payment of said purchase price into Court for the benefit of the persons entitled thereto, or the acceptance of deed by the United States conveying the land to it.

"No Member of or Delegate to Congress shall be admitted to any share or part of this offer or to any benefit to arise thereupon.

"Dated this 23rd day of February, 1944.

"Signed, sealed and delivered
          "Moser Paper Box Company
                "By Louis Moser
                      "President
"Witness:
  "Chas. D. Long
  "Noel F. Delporte
"Approved and Accepted Mar. 11, 1944
  "Oscar L. Chapman
"Assistant Secretary of the Interior"

ing evidence of the award to be made in such proceedings and paid into Court for the benefit of all persons entitled thereto; * * *."

Thereafter, and in accordance with the provisions of the stipulation, the Government offered evidence, including the written offer and acceptance, as to the fair market value of the tract, and on April 11, 1944, the court found the compensation and damages due to the defendant to be the sum of $87,000. In its judgment the court found the difference between the said sum of $87,000 and the sum of $52,000 tendered into the registry of the court at the time of the Declaration of Taking, and ordered the plaintiff to pay the difference, $35,000, into the registry of the court for the benefit of the persons entitled thereto.

Following the entry of Judgment on April 11, 1944, there was caused to be prepared and made up a transcript of the pleadings, files, records and proceedings had in the case for the use of the Attorney General of the United States incident to the preparation of a written opinion as to the validity of the title acquired by the United States in the condemnation suit.

After the Attorney General examined the transcript of the proceedings, he certified to the Department of the Interior his written opinion in favor of the validity of the title acquired, and on August 14, 1944, the Secretary of the Interior caused to be deposited into the registry of the court, the sum of $35,000 as provided in the judgment.

On August 16, 1944, the defendant the Moser Paper Box Company filed its application for the payment to it of the $35,000 deposited into the registry of the court, and in addition thereto, asked for an order requiring the plaintiff to pay to said defendant an additional sum of $717.49 interest on the said $35,000 between the date of the judgment, April 11, 1944, and the time of the tendering of said amount into the registry of the court.

As authority for its demand said defendant cites Section 258a, 40 U.S.C.A.:

"* * * Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title * * * shall vest in the United States of America, * * * and said compensation shall be estimated and award-ed in said proceeding and *established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment;* but interest shall not be allowed on so much thereof as shall have been paid into the court." (Emphasis supplied)

Certainly if the amount of the award had been arrived at as a result of a trial of the issues on the exceptions to the Commissioners' Report, the amount of the award would have represented the value of the tract as of the date of the declaration of taking, and in entering such a judgment the law would require that there be included in the judgment an amount, in addition to the award, equal to 6% interest thereon from the date of the taking to the date of the payment of the award.

The provisions of the statute are clear—compensation shall be determined as of the date of taking—if the final award shall be in excess of the amount estimated and paid into court at the time of taking, the difference shall bear interest at the rate of 6% per annum from the date of taking until paid.

The difficulty with defendant's position is that by its own action it removed itself from the provisions of the statute. If this statute were applicable here, defendant would be entitled to interest on $35,000 from the date of taking on June 19, 1939, until the date of the payment, August 14, 1944, but defendant makes no such claim. On the contrary, it bases its claim upon the ground of unreasonable delay in the payment of the amount agreed upon, and for which judgment was entered. It could make no other claim in view of the clear, unambiguous statement in its offer that:

"* * * the amount of the award to be decreed for *all damages and compensation* by reason of the taking of said land * * *." (Emphasis supplied)

From this language it must be determined that the defendant's offer was a full and complete offer, not one fixing an amount as of the time of taking, but as of the time of the acceptance and payment. This assumption is further borne out by the provisions of the offer granting six months in which to accept the offer.

■ Interest allowed on an award is not allowed for the purpose of increasing the compensation, but as a part of the compensation as of the time of taking where delay has occurred in judicially arriving at the amount of compensation and the payment thereof. United States v. Sargent, 8 Cir., 162 F. 81.

In its brief defendant's position is made clear by the following language:

"The defendant is fully aware that the offer of settlement was complete within itself and contained no contemplation of interest payment. However, upon the acceptance of the offer and a fair amount of time elapsing between such acceptance and the final entry of judgment, the time herein being approximately one month and a half, the defendant was entitled to payment forthwith. Certainly if a delay of over four months in the payment of this judgment would be allowed, would not by similar reasoning a delay of four years likewise be permitted?"

In view of the provision of the written agreement between the parties, the defendant's own statement that the "offer of settlement was complete within itself and contained no contemplation of interest payment" the statute, supra, does not aid the defendant. The fact that the Government introduced evidence as to the value in accordance with the written agreement, and that judgment in the amount of the agreement was entered pursuant thereto by the court, does not change the situation and bring it within the statute requiring the inclusion of interest as a part of the compensation.

■ When judgment was rendered for the amount the parties had agreed upon as full and complete compensation, the amount of the judgment became a claim against the United States. In the absence of a stipulation to pay interest, or in the absence of a statute allowing it, no interest can be recovered against the United States upon unpaid accounts or claims. Seaboard Air Lines v. United States, 261 U.S. 299, loc cit. 304, 43 S.Ct. 354, 67 L.Ed. 664 and cases cited; United States v. Sargent, 8 Cir., 162 F. 81.

There was no stipulation in the offer and acceptance for the payment of interest, and no statute has been cited requiring the payment of interest. Defendant contends that the delay of five months between the time of acceptance and the payment of the amount into court was unreasonable, and for that reason, the Government should pay interest on the amount of the judgment.

I agree with the defendant that it was an unreasonable length of time, but under the circumstances and the method of making payment by the Government, probably it was not an unusual length of time. The defendant was entitled to its money when the judgment was entered.

Plaintiff contends that the delay was occasioned by the necessary preparation of a transcript of the record in the condemnation proceeding and a review thereof by the Attorney General preparatory to giving a written opinion to the Department of the Interior as to the validity of the title to the tract, and cites as authority therefor 40 U.S.C.A. § 255:

"No public money shall be expended upon any site or land *purchased* by the United States for the purposes of erecting thereon any armory, arsenal, fort, fortification, navy yard, customhouse, lighthouse, or other public building of any kind whatever, until the written opinion of the Attorney General shall be had in favor of the validity of the title." (Emphasis supplied)

There are two ways of acquiring property by the United States, one by purchase, and the other by condemnation. It will be observed that the statute refers to "any site or land *purchased*." The statute is silent respecting a written opinion by the Attorney General concerning the validity of the title to a site or land acquired by the United States by *condemnation*.

The proceedings for acquiring land by condemnation are instituted by, and are constantly under the supervision of the Department of Justice. The office of the Attorney General directs the filing of such proceedings, and thereafter directs the procedure with respect to the progress of such proceedings. The records and the proceedings therein are all a part of the records of the office of the Attorney General.

■ In condemnation the title to the land vests in the United States upon the filing of the declaration of taking and depositing into court the estimated amount of the compensation for the benefit of the owners. 40 U.S.C.A. § 258a (5); United States v. 3.08 Acres of Land, D.C., 46 F. Supp. 64.

However, in view of the fact that interest cannot be collected on a claim against the United States in the absence of a stipulation for the payment thereof, or a stat-

ute requiring such payment, it is not necessary to determine whether the statute requires the Attorney General to give a written opinion respecting the title to land acquired by the United States by condemnation as well as by purchase, where delay in the payment of compensation is occasioned by a review of his proceedings.

Regardless of the length of the delay, or what caused the delay, I can find no authority for requiring the United States to pay the amount demanded by the defendant as interest, and its application is denied. Judgment accordingly.