206 A.2d 859.

M. S. ALPER & SON, INC. *vs.* JOHN F. CAPALDI, *Director of Public Works, et al.*

FEBRUARY 8, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J. This is a suit in equity to declare null and void a conveyance of real estate dated May 22, 1962 from the state to the respondent Laredef Realty Operators, Inc., hereinafter referred to as Laredef, to restrain Laredef permanently from occupying such real estate, and to order the respondent state officials to convey it to the complainant on the same terms and conditions they purported to convey it to Laredef. The suit was heard in the superior court on bill, answer and oral proof and resulted in the entry of a decree sustaining the bill. The cause is here on the respondents' appeal therefrom and also on the complainant's appeal only from paragraph No. 3 thereof.

Since respondents' appeal attacks the decree in its entirety and raises the principal issue in the suit, we shall consider it first. That issue may be stated as follows: Did the trial justice err in finding from the evidence properly before him that the state was prohibited by art. XVII of amendments to the state constitution from making the conveyance to Laredef without first offering complainant

an opportunity to obtain the real estate in question on the same terms and conditions?

According to the bill of complaint, the subject matter of the suit out of which such issue arose concerns lots Nos. 1, 2, 3 and 4 on condemnation plat 1161 (1183) formerly owned by complainant but which among other parcels owned by it were condemned by the state on September 30, 1960 for the construction of a portion of interstate route U. S. 95 through the city of Providence. See *M. S. Alper & Son, Inc.* v. *Director of Public Works,* 98 R. I. 154, 200 A.2d 583. Thereafter the state having negotiated other arrangements with Laredef, some of whose adjacent real estate it had condemned for like purposes, decided not to utilize complainant's lots 1, 2, 3 and 4 but instead as part of such negotiation executed and delivered to Laredef a certain instrument dated May 22, 1962, purporting to be a grant of an easement or right of way to such lots for five years from February 1, 1962 to January 31, 1967, but which also contained the following covenant:

> "For and in consideration of the sum of One and 00/100 ($1.00) Dollar, receipt whereof is hereby acknowledged, the Grantee is hereby granted an option to purchase the above-described real estate for the sum of One and 00/100 ($1.00) Dollar at the expiration of this easement, which option shall be deemed to have been exercised by the Grantee unless Grantee shall have given notice of its intention to the contrary at least sixty (60) days prior to the termination of this easement; and further, the Grantor shall and will at any and all times hereafter, upon the request of the Grantee, its successors and assigns, make and execute all such deed or deeds or other assurance in law for the more certain and effectual conveyance of the land and premises and appurtenances unto the Grantee, its successors and assigns, as the Grantee, its successors and assigns, its or their counsel or title company, shall advise, devise or require to carry out and effectuate the intent and purposes of this instrument."

The complainant was not informed of the negotiations for such arrangement and knew nothing of the instrument consummating it until it was recorded in the land records. After obtaining knowledge thereof complainant, through its president, made known to respondent state officials its willingness to take back its real estate on the same terms as those set out in the conveyance to Laredef. Thereupon respondent Capaldi delivered to complainant the following letter:

"September 13, 1962

"M. S. Alper & Son, Inc.
229 Allens Avenue
Providence, Rhode Island
"Gentlemen:
  "Re: Interstate Freeway 95—Condemnation Plat
      No. 1183, Parcels No. 1, 2, 3 and 4
"Without admissions of liability and without prejudice in any manner to the rights of the State of Rhode Island or any parties participating in the condemnation of the above-named realty (formerly known as Providence Assessor's Plat 47, Lots 279, 223, 280 and 222 respectively) and without waiver of any positions now or hereafter taken, you are hereby made the following offer:

    "The above-described property will be deeded back to you upon the payment to the State of Rhode Island of the sum of Fifteen Thousand ($15,-000.00) Dollars, representing the reasonable value added to the land by the work and improvements thereon since the date of the condemnation thereof, paid by you to the Director of Public Works forthwith upon the acceptance of this offer, in cash or certified check, on the condition that you further execute an appropriate release for any damage resulting to you from the condemnation and acquisition of title to the said land on or after September 7, 1960.

"You are hereby advised that, although the said land has not yet been sold or leased for value, the basis on which this land is offered to you is the same basis upon

which it will be offered to another, in the event that you do not accept this offer.

"Your refusal to accept within thirty (30) days will be deemed to be a waiver of any possible right you may conceivably have had to reacquire the land under the Constitution or Laws of the State of Rhode Island or otherwise, including any legal proceedings brought in furtherance of any such claim.

> Respectfully,
> [signed] John F. Capaldi
> John F. Capaldi, Director"

A copy of the letter was admitted in evidence de bene by the trial justice and marked respondents' exhibit J. Thereafter considerable testimony based more or less thereon was introduced in support of respondents' position that complainant had been given an opportunity to obtain a conveyance on the same terms and conditions as were actually given to Laredef and that it had waived whatever rights it had by refusing to reply to the letter.

The complainant contended that it was not bound to reply since the offer therein was made after respondents' conveyance to Laredef and therefore it was not made in compliance with the constitutional provision that it should be made to the condemnee first.

In admitting the letter de bene the trial justice assured complainant that he would entertain a motion to strike the exhibit if it later developed that it should not have been admitted. At the conclusion of the evidence complainant so moved and the trial justice granted the motion. There is no specific reason of appeal from such ruling in respondents' reasons of appeal; therefore we must disregard the letter and also all testimony adduced on the basis of its contents. *Nelson* v. *Dodge,* 76 R. I. 1.

By disregarding exhibit J and all testimony dependent upon it, we are left with only respondents' contention that the state's conveyance to Laredef is neither a lease nor a sale of the real estate in question but merely an easement

and therefore not within the purview of art. XVII of amendments to the state constitution. On the contrary they argue that the instrument being the grant of an easement is expressly authorized by G. L. 1956, §37-7-8. Hence they contend the trial justice erred in entering the decree appealed from.

We are of the opinion that each of those contentions is without merit. The trial justice did not err in holding as he did that in accordance with the constitutional provision "The offer to the complainant should have been made prior to anything having been made to Laredef." As far as respondents' reliance upon §37-7-8 is concerned, we are of the opinion that it has no relevance to the question whether complainant's constitutional rights under art. XVII of amendments were observed by the state through its respondent officials.

Nor can we agree with respondents' contention that the instrument of May 22, 1962 is the grant of a mere easement and therefore not within the purview of that amendment. On the contrary we think complainant has correctly characterized it as a "self-executing option" to purchase in consideration of $1. In our opinion it is such an option based upon an irrevocable offer on the part of the state to sell for the selfsame consideration. In other words, without further action on the grantee's part the so-called easement at the expiration of five years becomes a sale and the instrument by its terms becomes effective to secure the vesting of title in the grantee.

It is apparent from such provisions that the instrument was designed to circumvent the constitutional preemptive right of complainant to purchase before an offer was made to any other person. The trial justice correctly construed the constitutional provision as paramount and properly refused to give effect to such attempted circumvention of it regardless of any statutory enactments which respond-

ents contended were authority for the state's conveyance to Laredef. The respondents' appeal must therefore fail.

The complainant contends in support of its appeal that the trial justice, in view of his decision and the reasons upon which he based it, erred in approving paragraph No. 3 of the final decree. That paragraph reads as follows: "The State of Rhode Island through its named officials, including the substitute parties respondent, is ordered and directed to offer to the Complainant Alper the said Lots 1, 2, 3 and 4 upon the same terms and conditions as the said land was offered to Laredef Realty Operators, Inc. on May 22, 1962."

The complainant argues that the only evidence of the consideration for the conveyance to Laredef properly in the record was the consideration of $1 recited in that instrument. It points out that, while respondents labored to show by testimony that $1 was only nominal and that the real consideration was much more substantial, they were unable to do so either because such testimony was indefinite and lacking in probative force or because it was dependent on exhibit J which was stricken from the record. For these reasons complainant takes the position that the trial justice erred in not ordering respondents in paragraph No. 3 of the decree to make the same offer they made in the conveyance to Laredef. It contends that by not doing so the trial justice has left the expression "terms and conditions" in that paragraph ambiguous and thereby subjects the cause to probable future litigation in order to determine from evidence dehors the instrument of May 22, 1962 the definitive content of such terms and conditions.

The complainant further argues it should not be so burdened especially since the trial justice accorded respondents ample opportunity to prove, if they could, what consideration other than $1 passed for the conveyance to Laredef and they were unable to do so. In these circumstances it contends that paragraph No. 3 of the decree

should be redrafted to conform to the consideration named in respondents' conveyance to Laredef.

Logically there is merit in such contentions. But from an equitable viewpoint there is much to be said in favor of departing from logic and consulting the equities involved. It is clear from the record beyond any dispute that the lots in question are not now in the condition they were when the state took them from complainant on September 30, 1960. They have been substantially improved and thereby considerably enhanced in value. It would seem, therefore, that what the state had expended to produce such added value should be considered in determining what in equity and good conscience complainant ought to pay for a reconveyance of the lots. In this connection we note that complainant's president, Henry M. Hill, when testifying, frankly conceded as much. He was asked, "Mr. Hill, exactly what do you want to pay to get back this land upon which this work has been done, that is exhibits 1, 2, 3 & 4?" He answered, "Whatever is fair and equitable for that land."

It may well be that what is fair and equitable is left indefinite by paragraph No. 3 of the decree and therefore complainant may be forced into further litigation if such indefiniteness cannot be amicably adjusted with the respondent state officials. But since complainant comes into equity asking for relief it should be willing to do equity. Certainly it would not be equity to order paragraph No. 3 to be rephrased so as to authorize complainant to obtain a reconveyance for only $1.

We do not consider that this equity suit with its peculiar circumstances can be analogized to the situation with which we were confronted in *Raposa* v. *Guay,* 84 R. I. 436, cited by complainant. The respondent in that case had trespassed upon the complainant's land and erected improvements thereon. On the complainant's bill to enjoin the respondent from continuing such trespass the superior

court granted relief but on condition that the complainant pay the respondent for the reasonable value of the improvements.

On appeal we affirmed the decree for relief as prayed for but reversed as to the condition holding that the law did not authorize such a condition and that there was nothing in the evidence on which the complainant should be required to do equity by paying for the improvements. In other words we could find no warrant in the record for upholding the respondent's claim of unjust enrichment.

In the case at bar the situation is radically different. After the land had been taken by the state, complainant had no interest therein. Thereafter the state was warranted in improving it in any way which was designed to promote the purpose for which it had been taken. Any expenditure made for such purpose which enhanced the value of the land would in our opinion be a proper matter for consideration if it was found later that the land was not needed for the purpose for which it was taken and was offered to the condemnee in accordance with art. XVII of amendments.

But this would not be so if it appeared that the expenditure was made necessary by reason of some arrangement which was made with a third party with whom the state was mistakenly negotiating to convey the land. In the first instance it would be unjust enrichment to force the state to reconvey without allowing for such expenditure but in the second instance it would not. In other words, whatever the state spent here solely to adapt the land to the uses of Laredef and whatever Laredef itself may have spent on the land after the conveyance of May 22, 1962 could not properly be chargeable to the complainant on the ground of unjust enrichment. Because in our opinion there is some evidence in the record of state expenditure which qualifies in the first instance as a ground for requiring the complainant to pay more than $1 in order to avoid unjust

enrichment, we must deny its reason of appeal and sustain paragraph No. 3 as it now stands in the decree.

The complainant's and the respondents' appeals are denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

ROBERTS, J., concurring. I am unable to conclude from the record that the parcel of land here under consideration was in fact taken by the state pursuant to the provision of art. XVII of the amendments to the constitution of this state which permits the taking of more land than is needed for the actual construction of a public highway. It is my opinion, therefore, that any subsequent disposition of this land is subject neither to the provisions of said art. XVII conferring the first right to purchase or lease the same in the person or persons from whom it was taken, nor to similar provisions set out in G. L. 1956, §37-7-4. It is my opinion that the disposition of the parcel of land here being considered is within the purview of §37-7-3 but, being persuaded that the disposition of such land purported to be here made does not comply with the pertinent requirements of §37-7-3, I concur in the result stated in the opinion of the majority.

POWERS, J., joins in the concurrence.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for complainant.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, *Wilfred E. McKenna,* for respondent.